IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| KENNETH FRANCIS REEDER, JR., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 03-988-SLR |
| | ) |
| JOHN DOE 5, WARDEN THOMAS | ) |
| CARROLL, MAJOR DAVE HOLMAN, | ) |
| CAPTAIN MIKE MCCREANOR, | ) |
| CPL. LISE M. MERSON, and | ) |
| LT. WALLACH, | ) |
| | ) |
| Defendants. | ) |

Kenneth Francis Reeder, Jr., Delaware Correctional Center, pro se Plaintiff.

Eileen Kelly, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware.  Counsel for Warden Thomas Carroll, Major Dave Holman, Captain Mike McCreanor, and Cpl. Lise M. Merson.

**MEMORANDUM OPINION**

Dated:  August 30, 2007
Wilmington, Delaware

ROBINSON, District Judge

## I. INTRODUCTION

Presently before the court is a motion for summary judgment filed by State defendants Warden Thomas Carroll ("Warden Carroll"), Major Dave Holman ("Holman"), Captain Mike McCreanor ("McCreanor"), and Cpl. Lise M. Merson ("Merson") (collectively, the "State defendants"),[1] plaintiff Kenneth Francis Reeder, Jr.'s ("Reeder") response, and State defendants' reply thereto. (D.I. 110, 111, 129, 130) Also before the court are plaintiff's motions to stay and to amend/correct. (D.I. 114, 117) For the reasons set forth below, the court will grant State defendants' motion for summary judgment, will deny plaintiff's motion to stay, and will grant plaintiff's motion to amend/correct.

## II. BACKGROUND

Plaintiff is an inmate currently incarcerated at the Delaware Correctional Center ("DCC"). On August 8, 2002, plaintiff prevailed in a § 1983 excessive force lawsuit filed against two correction officers. See Reeder v. Department of Corr., Civ. Action No. 99-328-SLR (D. Del. 2004). Plaintiff alleges that within a few weeks of the verdict he was the victim of a retaliatory transfer to increased security confinement. As a result, he filed this lawsuit. (D.I. 1) The original complaint named as defendants John Does 1 through 5, the Delaware Department of Correction ("DOC"), since dismissed, and Warden Carroll. Plaintiff testified that, when he filed the lawsuit, he named Doe defendants because he could not pinpoint who was "out to get him." (D.I. 111, Ex. B at 13) The amended complaint (D.I. 88), filed May 17, 2006, identified four of the Doe

---

[1]Defendant Lt. Wallach ("Wallach") was never served. Service was attempted in July 2006, and returned unexecuted. See D.I. 100.

defendants as Holman, McCreanor, Wallach, and Merson and alleges they are

agents/employees of the DOC who committed the acts of retaliation against him. The

remaining Doe defendant has never been identified. The amended complaint contains

additional retaliatory acts that allegedly occurred on November 9, 2005 and February

18, 2006.[2]

Plaintiff was housed in the compound - medium security at DCC.[3]  (D.I. 129)

Plaintiff testified he was not charged with any disciplinary violations until after the

August 8, 2002 verdict. (D.I. 111, Ex. A at 19) Plaintiff was transferred to the Security

Housing Unit ("SHU") in early September 2002. Defendant Holman avers that his staff

received a note that plaintiff, along with inmates Donald Nave ("Nave") and James

_____

[2]The additional alleged retaliatory acts are contained in exhibits attached to the
amended complaint. (D.I. 88) The exhibits do not identify any named defendant as
committing the alleged acts. The exhibits also allege that plaintiff has written
grievances and several letters to defendant Merson concerning personal items taken
from him on February 18, 2006, and he never heard anything. "I put everyone of them
in box [sic] personally so she can't say she never received them." (Id.) State
defendants contend that the complaint was amended only to name the Doe defendants
and that the exhibits have no relationship to identifying the Doe defendants. (D.I. 111)
The order granting the motion to amend, however, did not limit the amendment solely to
the issue of naming the Doe defendants. The acts referred to in the exhibits are
considered part of the amended complaint. (D.I. 90)

Plaintiff's opposition to State defendants' motion for summary judgment asserts
retaliation when he was terminated from his commissary job on or about February 3,
2005 by Holman. (D.I. 129) The complaint, amended complaint, and motion to amend
the complaint do not contain allegations of retaliatory termination of employment and
the issue is not before the court. Plaintiff testified he added Holman as a defendant
because he fired him from the commissary for no reason whatsoever. (D.I. 111, Ex. B
at 13)

[3]State defendants' statement of facts indicates that plaintiff was housed in the
Maximum Housing Unit ("MHU") at DCC, but plaintiff indicates he was in lower security
housing.

2

Virdin ("Virdin"), both of whom are serving life sentences, were contemplating an escape. (D.I. 111, Ex. C) Holman avers that he had no knowledge of plaintiff's success in the excessive force lawsuit. (Id.)

The three men were immediately transferred to the most secure area of the prison. (Id.) Plaintiff presumes that, because he was moved from his cell to SHU a few weeks after he prevailed in his civil lawsuit, it had something to do with the lawsuit. (D.I. 111, Ex. A at 11) No evidence of an escape plan surfaced and it was ultimately determined that plaintiff was not trying to escape, but the investigation found that plaintiff possessed a letter indicating an outside visitor had provide him with illegal drugs. (D.I. 111, Ex. A at 21, Ex. C)

During his deposition on November 30, 2006, plaintiff testified that McCreanor told plaintiff he would be moved, but other than that, plaintiff avoided him. (D.I. 111, Ex. B. at 15) When directly asked about statements made by McCreanor at that time, plaintiff gave no testimony as to any statements other than McCreanor's statement that plaintiff would be moved.[4] Plaintiff also testified during his deposition that McCreanor's rank had something to do with the transfer to SHU. (D.I. 111, Ex. B. at 15)

The night he was moved, plaintiff was told he was moving and under

---

[4]Later, in the affidavit plaintiff submitted in opposition to State defendants' motion for summary judgment, he describes, in detail, statements made by McCreanor. According to plaintiff's affidavit dated September 3, 2002: On September 3, 2002, defendant McCreanor came to his cell and told him to pack his belongings; when plaintiff asked McCreanor why he was being moved, McCreanor replied that plaintiff has just won and had his day in court, now McCreanor was going to have his chance, and there was nothing plaintiff could do about it. (D.I. 129, Ex. P) The handwritten affidavit is dated September 3, 2002, however, prison documents submitted as exhibits, such as the urinalysis, indicate September 4, 2002 is the date plaintiff was transferred to SHU.

investigation. (D.I. 111, Ex. A at 10) Eventually plaintiff was told that he, Nave, and Virdin were being investigated for plotting to escape. (Id. at 10-11) Nave and Virdin were not involved in plaintiff's previous lawsuit. (Id. at 11) All three were given a urine test that evening. (Id. at 10, 11) Plaintiff was told a few days later that his urine "was dirty." (Id.) Later, plaintiff discovered marijuana had been found in his cell, but testified he knew nothing about it. (Id.)

The urine test was administered by Wallach. (D.I. 111, Ex. A at 12) Plaintiff testified that the normal practice is for the inmate to seal the cup after the sample is given because the correction officer does not want to touch the cup. (Id.) Security tape is placed on the container and the inmate initials it. (Id.) Plaintiff initialed the security tape. (D.I. 111, Ex. B at 18) Plaintiff testified that after he gave the sample, Wallach told him to get out of there and, when plaintiff left, the cup was on the desk with the lid off. (D.I. 111, Ex. A at 12) Plaintiff does not know what happened to the sample after he left. (Id.) Plaintiff testified that Wallach knew about the jury verdict because plaintiff talked about it with correction officers when he was being transferred to SHU. (D.I. 111, Ex. B at 18)

Out of the three men, only plaintiff tested positive for drugs. (D.I. 110, Ex. C) A positive test results in a transfer to SHU. (Id.) A disciplinary hearing was held and plaintiff was found guilty of having dirty urine. (D.I. 111, Ex. A at 13, D.I. 129, Ex. B) Plaintiff appealed the finding on the basis that the urine was not his because of an incorrect SBI number, the collection procedure was incorrect, there was tampering of the sample, and he did not use marijuana. (D.I. 111, Ex. A at 27) Plaintiff did not state in his appeal that he was being retaliated against or that the charge was trumped up.

4

(Id.) The appeal was denied and it was noted that plaintiff's name and date of birth were clearly indicated on the lab report, even though the SBI number was incorrect. (D.I. 111, Ex. A at 19, Dep. Ex. 4) Plaintiff has no evidence that Warden Carroll had knowledge of the dirty urine incident, just assumption and word of mouth from unnamed correction officers. (Id. at 13-14)

Plaintiff did not have any property, clothing, soap or shampoo for more than a week following his transfer to SHU. (D.I. 111, Ex. A at 19, 23) Plaintiff testified that when he was transferred to SHU, all his property was put in the old chow hall in C Building, unlocked, and was stolen by other inmates. (D.I. 111, Ex. A at 20) On September 26, 2002, the multi-disciplinary team voted to reclassify plaintiff to SHU and its recommendation was affirmed by the institutionally based classification committee. (D.I. 111, Ex A. at Dept. Ex. 2) Plaintiff remained in SHU between thirty and sixty days before being transferred to MHU in either October or early November 2002. (Id. at 23)

On September 4, 2002, plaintiff submitted an emergency grievance asking that McCreanor stop retaliating against him, a return to his original status, cessation of future retaliation, and an investigation. (D.I. 129, Ex. Q) Plaintiff wrote to Deputy Warden Burris and Warden Carroll on September 5, 2002 complaining of McCreanor's actions and asking for an investigation. (D.I. 129, Ex. U) On September 10, 2002, plaintiff submitted a grievance further complaining that all the property taken from him on September 3, 2002 by McCreanor upon his transfer to SHU had not been returned. (D.I. 129, Ex. D) Plaintiff wrote a letter to the DCC's legal service administrator on October 3, 2002, and asked him to investigate why his grievances were not being filed by defendants Merson and McCreanor. (D.I. 129, Ex. 1)

5

Plaintiff's original complaint alleges the retaliation continued through February 15, 2003, when he was charged with assaulting a guard, failure to obey and disorderly conduct.[5] (D.I. 1)  Plaintiff was found not guilty of the assault charge, but was found guilty of being disorderly.  (D.I. 111, Ex. A at 18)  He was placed in isolation as a result of the charge.  (Id. at 21)  Plaintiff believes the assault charge was "trumped up" but he is not sure about the disorderly charge.  (Id.)  Warden Carroll did not have anything to do with the charge, but was probably told about it afterward.  (Id. at 22)

The alleged November 9, 2005 retaliatory act occurred when plaintiff was transferred to the SHU for a minor infraction; plaintiff was found not guilty almost six weeks later.[6]  (D.I. 88, Ex.)  Plaintiff testified that on November 9, 2005, he was singled out and taken to isolation for a minor infraction, possession of tobacco.  (D.I. 111, Ex. B at 5)

Plaintiff testified that on February 18, 2006, he was again transferred to SHU for a bogus write-up that had no evidence and witnesses against him.  (Id. at 6)  Contained in the record are two separate disciplinary reports, both dated February 18, 2006, charging plaintiff with several infractions.  (D.I. 129, Ex. M)  They were written by non-parties staff lieutenant, Derrick Godwin, and corporal sergeant, Orlando DeJesus.  The first write-up charged plaintiff with disorderly or threatening behavior, abuse of privileges, creating a health safety or fire hazard, and failing to obey an order.  The

---

[5]The court was not provided with the write-up or any documents regarding these charges.

[6]The court was not provided with the write-up or any documents regarding this charge.

second write-up charged plaintiff with fighting and failing to obey an order. (Id.) Plaintiff was found not guilty of one of the charges, but was not returned to his former classification level and remained in SHU because of the other pending charge. (D.I. 111, Ex. B at 8-9; 129 Ex. N) He submitted a grievance because he remained in SHU, however, McCreanor sent plaintiff a printout advising that he could not grieve the issue. (Id. at 9) Plaintiff was found not guilty in July or August. (Id.) Plaintiff testified that he believed Warden Carroll, Holman, the deputy warden, or other majors and counselors decide an inmate's classification level. (D.I. 111, Ex. B at 134)

The record reflects that on February 24, 2006, plaintiff submitted grievance Nos. 24241 and 24243 requesting the return of his property taken from him when he was sent to SHU on February 18, 2006. (D.I. 122, part 1, 4) Investigation of No. 24243 commenced at least as of April 9, 2006, because an investigative report was issued that day, and the next day the matter was referred to a different investigator. (Id. at part 4) As of May 9, 2006, plaintiff had no response to his grievances and he submitted grievance No. 39483. (D.I. 122, part 2) On May 16, 2006, No. 39483 was referred to Lt. Forbes to investigate and to try to resolve it. (Id.) Reference was made to No. 24243 for more information. (Id.)

As of June 29, 2006, grievance No. 24243 had not been heard and plaintiff submitted another grievance, No. 52963, asking that his items be replaced. (Id. at part 4) The grievance was returned as unprocessed on July 17, 2006, because the issue was addressed in No. 24243. On July 31, 2006, Merson asked for an investigation of No. 24241, a meeting with plaintiff, and to resolve the issue, if possible. (Id. at part 1) Plaintiff submitted grievance No. 61384, on August 8, 2006, complaining that his

7

grievances had not been resolved and his property had not been returned. (Id. at part 2)

A hearing on 24243 was held on August 15, 2006 and, at that time, plaintiff withdrew grievance No. 39483. (Id. at parts 2, 4) Grievance No. 61384 was returned as unprocessed on August 19, 2006, on the basis that the grievance was heard on August 14, 2006, and such a request was not processed through the grievance procedure. (Id. at part 2) Grievance No. 24241 was resolved as of September 6, 2006. (Id. at part 1) Grievance 24243 was resolved as of October 20, 2006. (Id. at part 4) Plaintiff was reimbursed $26.50 for missing sneakers and a bowl. (Id.) Plaintiff did not appeal the level 2 decision. (Id.)

Plaintiff testified that, based upon information received from other correction officers, Warden Carroll oversees the classification of inmates. (D.I. 111, Ex. A at 6) Plaintiff believes that, because Warden Carroll heads the prison, he personally retaliated against plaintiff because of his previous lawsuit. (Id. at 7-8) Plaintiff testified that when he was moved to SHU he asked, "who did this to me" and was told "it came from higher up." (Id. at 8) When plaintiff said, "the warden," the response by unknown individuals was, "yes." (Id.) Plaintiff testified that Warden Carroll is named as a defendant only for injunctive relief because he has the ability to restore plaintiff to the status he held before being placed in SHU. (Id.) Plaintiff does not know what part Warden Carroll fully played, but believes he is somehow responsible. (Id.) When asked to explain what this means, plaintiff responded that Warden Carroll was listed in the complaint for the sole purpose of injunctive relief. (Id.) He then clarified that he did not have evidence to show that Warden Carroll was personally involved in the decision to

8

move him to SHU. (Id.)

Plaintiff testified that Warden Carroll did not personally accuse him of trying to escape or of positive drug testing. (Id.) Nor did Warden Carroll personally remove plaintiff from his cell and move him to SHU. (Id.) Plaintiff has no specific information that Warden Carroll was aware of the lawsuit; he just assumed he knew. (Id.) Plaintiff testified that Warden Carroll did not have anything to do with his allegations other than his being transferred after the verdict. (D.I. 111, Ex. A at 19)

Warden Carroll avers that he was not personally involved in the decision to move plaintiff to SHU or to reclassify plaintiff to a higher or more secure security status. (D.I. 111, Ex. F) Nor was he in either classification committee that reviewed plaintiff's housing and security status. (Id.) He further avers he was not aware of any other lawsuits, legal complaints, or litigation filed by plaintiff. (Id.)

Plaintiff testified he named McCreanor as a defendant because McCreanor moved him from his cell, he is "in with grievances", plaintiff never receives answers to his grievances, and he "thinks" McCreanor might have something to do with the paperwork disappearing.[7] (Id.) Plaintiff does not have any specific information that McCreanor either ignored or threw away his grievances, other than that he never receives responses to his grievances. (Id. at 16) McCreanor avers that plaintiff submitted only one grievance regarding retaliation and that was on May 18, 2006. (D.I. 111, Ex. D) McCreanor avers that he has been employed as a correctional caption since November 11, 2001, and his duties have included serving as the inmate grievance

---

[7]The complaint and its amendments do not raise a grievance claim against McCreanor.

9

Case 1:03-cv-00988-SLR   Document 135   Filed 08/31/07   Page 11 of 27 PageID #: 1146

chairperson.[8]  (D.I. 111, Ex. D)

Plaintiff named Merson as a defendant because he believes she prohibited the grievances he submitted from being filed or responded to. (Id. at 17) He believes Merson is retaliating against him because he has not heard anything on his grievances and it was not until August 2006 that he ever had a grievance hearing. (Id.) Plaintiff testified that he has no specific information that Merson retaliated against him other than her affidavit averring plaintiff never submitted a grievance.[9]  (Id.) Plaintiff testified that he submitted grievances and, once the grievances are submitted, Merson picks them up and either there is no response within seven days or it is an unsatisfactory one. (D.I. 111, Ex. B at 15-16)

Merson, who serves as the inmate grievance chairperson, avers that she reviewed all of plaintiff's records of grievances and appeals and plaintiff never submitted a grievance for retaliation due to the prosecution of his legal claim.  (D.I. 111, Ex. E) Plaintiff testified that he believes he submitted grievances in relation to this case and they would have been submitted around the same time.  (D.I. 111, Ex. A at 17)  He did not think he heard back from any of the grievances he submitted.  (Id. at 18)

---

[8]State defendants posit that McCreanor's affidavit indicates he did not become the inmate grievance chair until September 1, 2005.  (D.I. 111 at 7)  McCreanor's affidavit contains no such statement.

[9]Merson's affidavit does not state the plaintiff never submitted a grievance; it states that plaintiff never submitted a grievance for retaliation as a result of his successful lawsuit.

10

## III. DISCUSSION

### A. Pending Motions

#### 1. Motion to Amend

Plaintiff moves to amend his original complaint. (D.I. 117) "After amending once or after an answer has been filed, the plaintiff may amend only with leave of the court or the written consent of the opposing party, but 'leave shall be freely given when justice so requires.'" Shane v. Fauver, 213 F.3d 113, 115 (3d Cir. 2000) (quoting Fed. R. Civ. P. 15(a)). The Third Circuit has adopted a liberal approach to the amendment of pleadings to ensure that "a particular claim will be decided on the merits rather than on technicalities." Dole v. Arco Chemical Co., 921 F.2d 484, 486-87 (3d Cir. 1990) (citations omitted). Amendment, however, is not automatic. See Dover Steel Co., Inc. v. Hartford Accident and Indem., 151 F.R.D. 570, 574 (E.D. Pa. 1993). Leave to amend should be granted absent a showing of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, futility of amendment, etc." Foman v. Davis, 371 U.S. 178, 182 (1962); see also Oran v. Stafford, 226 F.3d 275, 291 (3d Cir. 2000).

Plaintiff's motion proposes to remove count II, the assault and battery claim; remove compensatory damages from the ad damnum clause and replace it with a claim for punitive and nominal damages; and amend that portion of the complaint for injunctive relief to return plaintiff to the prison status he held prior to the alleged retaliatory acts, to preclude future retaliatory acts, and to replace missing personal property. State defendants did not object to the motion. Further, the court finds that the

11

proposed amendment will not cause undue delay, bad faith, dilatory motive, prejudice or futility. Accordingly, the court will grant the motion to amend the original complaint. (D.I. 117)

## 2. Motion to Stay all Proceedings

Subsequent to State defendants filing their motion for summary judgment, plaintiff filed a motion to stay all proceedings on the basis that he must conduct additional discovery to overcome State defendants' motion. (D.I. 114) Not surprisingly, State defendants oppose the motion. (D.I. 119)

Plaintiff has had ample time to conduct discovery. The discovery deadline has been extended at least twice. (D.I. 64, 98) The court docket reflects that plaintiff has propounded discovery upon State defendants. Also, in ruling on plaintiff's motion to compel, the court has assisted plaintiff in obtaining discovery he sought. (See D.I. 109) Accordingly, the court will deny the motion to stay the proceedings. (D.I. 114)

## B. Summary Judgment Standard of Review

A court shall grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of proving that no genuine issue of material fact exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 n.10 (1986). "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." Horowitz v. Federal Kemper Life Assurance Co.,

12

57 F.3d 300, 302 n.1 (3d Cir. 1995) (internal citations omitted). If the moving party has demonstrated an absence of material fact, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e)). The court will "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." Pennsylvania Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995).

The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

State defendants move for summary judgment on the grounds that plaintiff offers only speculation in support of his retaliation claim, he improperly bases Warden Carroll's alleged liability on the theory of respondeat superior, plaintiff has abandoned the state tort and assault claim (which is barred in any event by sovereign immunity), the conditions of confinement claim is barred by the Prison Litigation Reform Act, and State defendants, in their official capacity, cannot be held liable in their official capacities. (D.I. 111) Plaintiff contends he has submitted evidence to support his retaliation claim, his claims against Warden Carroll are not based upon a respondeat superior theory, he has filed a motion to amend his complaint to remove the assault and battery claim, he filed grievances but received no response, the issue of compensatory damages is moot

13

because he filed a motion to amend to remove the request for compensatory damages, and he sues State defendants Holman, McCreanor, Wallach and Merson only in their personal/individual capacities, not in their official capacities.

The court will not address the respondeat superior issue, as plaintiff indicates that he does not seek liability against Warden Carroll on the basis of respondeat superior. (D.I. 129 at 8-9) Neither will the court address the assault and battery claim, as the court will grant plaintiff's motion to amend which removes said claim from the complaint. (D.I. 117, 129 at 9) Finally, the compensatory claim issue is moot as the court will grant the motion to amend. (D.I. 117)

## C. Retaliation

Plaintiff contends he suffered the following acts of retaliatory conduct because of his success in his excessive force civil rights case: 1) in early September 2004, he was transferred to SHU and his drug test was improperly conducted; 2) on February 15, 2003, a "trumped up" charge was brought against him for assault; 3) on November 9, 2005, he was singled out and taken to isolation for the minor infraction of possession of tobacco; 4) on February 18, 2006, he received two "bogus" disciplinary write-ups, was ultimately found not guilty, yet remained in SHU and was not returned to his prior classification; and 5) his grievances for return of property taken on February 18, 2006 were ignored and/or there was no response.[10]

[10]State defendants move for summary judgment on the basis that plaintiff did not exhaust his administrative remedies because he failed to submit grievances complaining of retaliation. The court has thoroughly reviewed the record, including voluminous discovery consisting of grievances and appeals of disciplinary findings submitted by plaintiff. (D.I. 122) Plaintiff either exhausted, or had no remedy for, the majority of his claims; as will be discussed in III. D., however, plaintiff failed to exhaust

14

Proof of a retaliation claim requires that plaintiff demonstrate:  (1) constitutionally protected conduct; (2) an adverse action by prison officials "'sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights;'" and (3) "a causal link between the exercise of his constitutional rights and the adverse action taken against him."  Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003) (citations omitted).  After meeting the first two prongs, a burden-shifting framework is used by a prisoner-plaintiff to prove the causal link between the exercise of his constitutional right and the adverse action taken against him.  Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001).  Plaintiff bears the initial burden of proving that his constitutionally protected conduct was a "substantial or motivating factor" in the decision to discipline him.  Id. (citation omitted).  The burden then shifts to State defendants to prove by a preponderance of the evidence that they would have taken the same disciplinary action even in the absence of the protected activity.  Id.

Deference is given to decisions made by prison officials.  Rauser, 241 F.3d at 333 (citing Turner v. Safley, 482 U.S. 78, 89 (1987)).  Even if a prisoner demonstrates that his exercise of a constitutional right was a substantial or motivating factor in the challenged decision, prison officials may still prevail by proving they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest.  Rauser, 241 F.3d at 334.

The parties are in agreement that plaintiff has met the first two prongs to prove retaliation.  State defendants and plaintiff differ as to whether plaintiff satisfies the

the February 25, 2003 and November 9, 2005 claims.

15

causal connection requirement.

Initially, the court notes that Warden Carroll and Holman were unaware of plaintiff's successful lawsuit and plaintiff did not produce evidence to refute these facts. In an effort to prove that his constitutionally protected conduct was a "substantial or motivating factor" in the decision to discipline him, plaintiff points to his transfer to SHU in early September 2002 which occurred very close in time to his successful lawsuit. Plaintiff speculates that Warden Carroll was aware of his previous lawsuit; Warden Carroll avers he was not. Plaintiff contends that Warden Carroll was involved in his classification and that Warden Carroll was involved in the transfer to SHU.[11] Warden Carroll avers he had nothing to do with plaintiff's classification and had no personal involvement in the decision to transfer plaintiff to SHU. Warden Carroll also avers he had no personal involvement in the decision to investigate plaintiff.

During his deposition, plaintiff indicated that McCreanor's rank had something to do with plaintiff's transfer to SHU. Plaintiff's affidavit states that McCreanor, who escorted him from his cell, made specific reference to plaintiff's successful lawsuit and that McCreanor was going to have his chance, and plaintiff could do nothing about it.[12]

State defendants produced evidence that plaintiff was transferred to SHU around September 4, 2002, due to information received of an escape plot in which he was allegedly involved with two other inmates. While the allegations of the escape plot

---

[11]Plaintiff is correct that the Warden has the ultimate say in a prisoner's classification. There is no evidence before the court, however, that he had any involvement at any time in plaintiff's reclassification.

[12]Of course, plaintiff's deposition testimony is inconsistent with his affidavit in this regard.

16

ultimately proved to be unfounded, at the time the information was cause for great concern. Notably, the other two inmates had no involvement in plaintiff's successful lawsuit, yet they were transferred to SHU at the same time. Also, the investigation produced information that plaintiff had been supplied drugs by an outside visitor that resulted in the administration of a drug test of all three inmates.[13]

The prevention of prison escape and inmate drug use are legitimate penological goals. (See D.I. 111, Ex. F)  The facts before the court are that the State defendants would have made the same decision to place plaintiff in SHU and administer a drug test, even absent the protected conduct, for reasons reasonably related to legitimate penological interests.  Therefore, the court will grant summary judgment to State defendants Warden Carroll, McCreanor, and Holman on the issue of plaintiff's transfer to SHU in September 2002.

State defendants also seek summary judgment on the issue of retaliatory conduct resulting from the February 18, 2006 write-ups plaintiff received and his continued housing in SHU.  The amendment alleging this retaliatory conduct is not directed towards Warden Carroll or Holman.  Nonetheless, when plaintiff gave his second deposition on November 30, 2006, he claimed Warden Carroll and Holman were responsible for keeping him in SHU.  State defendants argue that plaintiff is unable to articulate any basis for his belief.

Plaintiff testified that he "thought" Warden Carroll knew where he was being housed because Warden Carroll "has the power to veto classifications." (D.I. 111, Ex. B

---

[13]Plaintiff raises a retaliation claim against Wallach for the improper administration of the drug test. As previously noted, Wallach has never been served.

at 10) Plaintiff speculated it was "maybe another opportunity . . . justified to retaliate, maybe." (Id.) Plaintiff testified that he was under the impression that Warden Carroll, Holman, the deputy warden, or other majors and counselors decide an inmate's classification level. As discussed above, the facts are that Warden Carroll and Holman were unaware of plaintiff's successful lawsuit and plaintiff did not produce evidence to refute these facts. On this basis alone, this retaliation claim must fail. Further, plaintiff's speculation that Warden Carroll and Holman were responsible for plaintiff's remaining in SHU is not sufficient to defeat summary judgment. There must be enough evidence to enable a jury to reasonably find for plaintiff on the issue and, in this case, plaintiff has failed to make a sufficient showing to defeat summary judgment. Based upon the foregoing, the court will grant Warden Carroll and Holman summary judgment on the issue of alleged retaliatory acts resulting from the February 18, 2006 write-ups.

State defendants also move for summary judgment on plaintiff's allegations that his grievances were not answered. Plaintiff testified at length that both McCreanor and Merson failed to address his grievances. However, the only claim on this issue as set forth in the complaint and its amendments is that plaintiff heard nothing in response to grievances submitted and several letters written to Merson concerning personal items taken from him following his transfer to SHU as a result of the February 18, 2006 write-ups.

State defendants argue that plaintiff's claim is based upon his belief that he submits grievances and then hears nothing. State defendants refer to Merson's affidavit wherein she avers she reviewed plaintiff's file and there were no grievances related to retaliation claims. (D.I. 111, Ex. E)

18

The record reflects that on February 24, 2006, plaintiff submitted grievance Nos. 24241 and 24243 requesting the return of his property. (D.I. 122, part 1, 4) Investigation of No. 24243 commenced at least as of April 9, 2006, because an investigative report was issued that day, and the next day the matter was referred to a different investigator. (Id. at part 4) It appears, however, that plaintiff was unaware of the investigation because he submitted another grievance on May 9, 2006, No. 39483. (D.I. 122, part 2) On May 16, 2006, No. 39483 was referred for investigation and attempt at resolution. The matter also referred to No. 24243. (Id.)

Again, plaintiff appears to have been unaware of the investigation as he submitted another grievance No. 52963 asking that his items be replaced. (Id. at part 4) The grievance was returned as unprocessed on July 17, 2006, because the issue was addressed in No. 24243. (Id.) On July 31, 2006, Merson asked for an investigation of No. 24241, a meeting with plaintiff, and resolution of the issue, if possible. (Id. at part 1) A week later, plaintiff submitted grievance No. 61384, complaining that his grievances had not been resolved and his property had not been returned. (Id. at part 2) A hearing on 24243 was held on August 15, 2006, and a final resolution reached as of October 20, 2006. (Id. at part 4) Grievance No. 24241 was resolved as of September 6, 2006. (Id. at part 1)

The facts before the court do not support plaintiff's claim that Merson retaliated against him by ignoring his grievances seeking return of property. While it does appear that it took some time to finally resolve the issue, the record reflects that within a short period of time after the grievances were submitted, Merson sought an investigation of them. Unfortunately, plaintiff was unaware of the actions taken by Merson. There is

19

insufficient evidence to enable a jury to reasonably find for plaintiff on this issue. The record does not reflect retaliatory action by Merson, and plaintiff has failed to make a sufficient showing to defeat summary judgment. Based upon the foregoing, the court will grant Merson summary judgment.

State defendants did not move for summary judgment as to the alleged retaliatory conduct of February 15, 2003 (D.I. 1, ¶ 13) or November 9, 2005 (D.I. 88, Warden Carroll memorandum), although their reply brief addresses the alleged retaliatory conduct and it argues that plaintiff has not presented evidence in support of these claims. (D.I. 130) As will be discussed, plaintiff did not exhaust his administrative remedies for either claim.

## D. Exhaustion

State defendants move for summary judgment arguing that plaintiff failed to submit any grievance in relation to any aspect of the claims in this matter and that he failed to raise any retaliation related issues when he appealed his disciplinary sanctions. Plaintiff argues that State defendants have not met their burden of proving the affirmative defense of failure to exhaust administrative remedies.

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); see Porter v. Nussle, 534 U.S. 516, 532 (2002) ("[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.").

20

Because an inmate's failure to exhaust under PLRA is an affirmative defense, the inmate is not required to specially plead or demonstrate exhaustion in his complaint. Jones v. Bock, –U.S.–, 127 S.Ct. 910 (2007).  Failure to exhaust administrative remedies must be pled and proved by the defendant.  Ray v. Kertes, 285 F.3d 287, 295 (3d Cir. 2002).

Under § 1997e(a), "an inmate must exhaust [administrative remedies] irrespective of the forms of relief sought and offered through administrative avenues." Booth v. Churner, 532 U.S. 731, 741 n.6 (2001).  Under Woodford v. Ngo, –U.S.–, 126 S.Ct. 2378, 2382 (2006), exhaustion means proper exhaustion, that is, "a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to brining suit in federal court." Id. at 2384.  As long as there is a shared factual basis between the two, perfect overlap between the grievance and a complaint is not required by the PLRA.  See Woodford, 126 S.Ct. at 2388.  The PLRA does not require the grievance and complaint to be identical because inmates are required to complete the applicable administrative prison (such as a grievance procedure) even when seeking a form of relief that the prison cannot provide, so long as the prison can afford some sort of relief.  See Booth v. Churner, 532 U.S. 731, 746 (2001).

The exhaustion requirement is absolute, absent circumstances where no administrative remedy is available.  See Spruill v. Gillis, 372 F.3d 218, 227-28 (3d Cir. 2004); Nyhuis v. Reno, 204 F.3d 65, 67 (3d. Cir. 2000); but see Freeman v. Snyder, No. 98-636-GMS, 2001 WL 515258, at *7 (D. Del. Apr. 10, 2001) (finding that if no administrative remedy is available, the exhaustion requirement need not be met).

21

However, if prison authorities thwart the inmate's efforts to pursue the grievance, administrative remedies may be presumed exhausted, as no further remedies are "available" to him. Brown v. Croak, 312 F.3d 109, 112-13 (3d Cir. 2002).

Delaware DOC administrative procedures provide for a multi-tiered grievance and appeal process. DOC Policy 4.4 (revised May 15, 1998). First, the prisoner must submit a grievance within seven days with the Inmate Grievance Chair, for an attempt at informal resolution; second, if unresolved, the grievance is forwarded to the Grievance Resolution Committee for a determination, which is forwarded in turn to the Warden; and third, the Bureau Grievance Officer conducts the final level of review. Id.

State defendants rely upon the affidavits of McCreanor, dated December 12, 2006, and Merson, dated January 20, 2006, to support their position that plaintiff did not follow the grievance procedure. McCreanor avers that plaintiff submitted one grievance alleging retaliation, dated May 18, 2006. (D.I. 111, Ex. D) Merson avers that her research reveals that plaintiff never submitted a grievance alleging retaliation due to the prosecution of his legal claim. (D.I. 111, Ex. E) They also rely upon plaintiff's appeal of the positive drug test wherein plaintiff made no mention of retaliation. (D.I. 111, Ex. A at 27) Plaintiff's position is that State defendants cannot disprove he submitted institutional grievances and, further, that the grievance procedure contemplated by the DOC was unavailable him within the meaning of 42 U.S.C. § 1997e(a). (D.I. 129)

In opposition to State defendants' position, plaintiff submits a grievance dated September 4, 2002, wherein he complains that McCreanor moved him to SHU. (D.I. 129, Ex. Q) The grievance asks for the retaliation to stop, a return to his original status, no future retaliation, and an investigation. (Id.) Plaintiff also submits a grievance dated

22

September 10, 2002, wherein he complains that all of his property that was taken from him on September 3, 2002, was not returned. (D.I. 129, Ex. D) The grievance makes no reference to retaliation. Finally, plaintiff submits a grievance dated February 3, 2005, wherein he complains that he was removed from his job. (D.I. 129, Ex. F) Plaintiff asks for reinstatement to his job, and cessation of harassed and retaliation.[14] (Id.)

The affidavits submitted by State defendants indicate that plaintiff failed to submit grievances for retaliation, the record does not demonstrate that he submitted any grievance or disciplinary appeal for two claims, and plaintiff produced no evidence to rebut State defendants' position that he did not exhaust his administrative remedies for the following claims: 1) on February 15, 2003, when a "trumped up" charge was brought against plaintiff for assault, and 2) on November 9, 2005, when plaintiff was

---

[14]The court has also reviewed State defendants' voluminous discovery response containing grievances submitted by plaintiff. (D.I. 122) While very few grievances refer to retaliation, some do share a factual basis with the allegations in the complaint and its amendments. The record does not contain a grievance complaining of retaliatory conduct in the procedure used in administering the September 2002 drug test; however, in plaintiff's appeal of the finding of guilt he specifically mentions the procedure used and his suspicion there was tampering of the sample. (D.I. 111, Ex. A at Dep. Ex. 4) There are several grievances dated from March 2006, wherein plaintiff complains about not receiving a hearing on "bogus write-ups." (D.I. 122, part 4) Plaintiff makes no mention of retaliation, but complains that no hearing has been held and he is unable to transfer to his original classification level until after the hearing. Plaintiff was advised the issue was non-grievable and that disciplinary actions had their own appeal process. (Id.) A May 18, 2006 grievance also asks for a hearing and plaintiff states he "need[s] the grievance resolved so [he] can move forward with more retaliation as also exhausting [his] administrative remedies." (D.I. 122, part 4) Plaintiff submitted a similar grievance on June 16, 2006. (Id.) Plaintiff submitted a grievance dated July 6, 2006, complaining of retaliation by Brian Engrem. (D.I. 122, part 1) Engrem is not a named defendant and the alleged retaliatory act complained of in the grievance is not before the court. There are also several grievances requesting return of property taken when plaintiff was transferred to SHU on February 18, 2006, and one specifically complaining that his grievances were being ignored. (D.I. 122, parts 1, 2, 4)

singled out and taken to isolation for the minor infraction of possession of tobacco.[15]

Plaintiff's failure to properly exhaust the February 15, 2003 occurrence and the November 9, 2005 occurrence is fatal to his claims.[16] "[I]t is beyond the power of this court . . . to excuse compliance with the exhaustion requirement." Nyhuis, 204 F.3d at 73. Accordingly, the court will grant the motion for summary judgment on the basis of failure to exhaust administrative remedies as to the February 15, 2003 and November 9, 2005 claims.

## D. Sovereign Immunity

State defendants contend that, under the Eleventh Amendment, they cannot be held liable for any alleged action taken by them in their official capacities. Plaintiff responds that Warden Carroll is sued in his official capacity for the sole purpose of seeking injunctive relief, and defendants Holman, McCreanor, Wallach, and Merson are sued in their personal/individual capacities. (D.I. 129 at 13-14)

The Eleventh Amendment bars suits against states, see Bolden v. SEPTA, 953 F.2d 807, 813 (3d Cir. 1991), and claims made against state officials in their official

---

[15]These claims fail for another reason. When bringing a § 1983 claim, a plaintiff must allege that some person has deprived him of a federal right, and that the person who caused the deprivation acted under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988). The allegations do not indicate who is responsible for the alleged retaliatory conduct. Nor does the record reflect that plaintiff identified the alleged responsible persons.

[16]The court notes that State defendants are incorrect in their position that plaintiff must submit a specific grievance complaining of retaliation in order to exhaust his administrative remedies. There need be only a shared factual basis, not perfect overlap, between a grievance and the complaint. Moreover, the issue of exhaustion is, for the most part, moot, inasmuch as the court is granting summary judgment on the merits as to the retaliation issue.

capacities are treated as claims made against the state itself.  Will v. Michigan Dep't. of State Police, 491 U.S. 58, 71 (1989).  A state, however, may waive its immunity under the Eleventh Amendment.  Such waiver must be in the form of an "unequivocal indication that the State intends to consent to federal jurisdiction that otherwise would be barred by the Eleventh Amendment."  Ospina v. Department of Corr., 749 F. Supp. 572, 578 (D. Del. 1990) (quoting Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 238 n.1 (1985)).  The State of Delaware has not consented to plaintiff's suit or waived its immunity under the Eleventh Amendment.

The Eleventh Amendment, however, permits suits for prospective injunctive relief against state officials acting in violation of federal law.  Ex parte Young, 209 U.S. 123 (1908).  "This standard allows courts to order prospective relief, as well as measures ancillary to appropriate prospective relief."  Frew v. Hawkins, 540 U.S. 431, 437 (2004) (internal citations omitted).  "Federal courts may not award retrospective relief, for instance money damages or its equivalent, if the State invokes its immunity."  Id. (citations omitted).  Accordingly, to the extent plaintiff alleges claims against State defendants in their official capacities seeking monetary damages, State defendants are entitled to summary judgment.[17]

## E.  Defendant Wallach

This complaint was filed on October 28, 2003, and service was unsuccessfully attempted on Wallach on July 28, 2006.  The return indicates that Wallach is "no longer @ DCC."  (D.I. 100)  Accordingly, pursuant to Fed. R. Civ. P. 4(m)  plaintiff shall, on or

---

[17]Injunctive relief was sought only from Warden Carroll and he is being granted summary judgment.

25

before **September 17, 2007**, show cause why Wallach should not be dismissed as a defendant for failure to serve process.

## IV. CONCLUSION

Based upon the foregoing analysis, the court will grant State defendants' motion for summary judgment.  The court will grant summary judgment as to defendants Warden Thomas Carroll, Major Dave Holman, Captain Mike McCreanor, and Cpl. Lise M. Merson.  The court will grant the motion for summary judgment on the basis of failure to exhaust administrative remedies as to the February 15, 2003 and November 9, 2005 claims.  The court will grant the motion for summary judgment to the extent plaintiff seeks monetary damages against State defendants in their official capacities.  The court will grant plaintiff's motion to amend the complaint and will deny plaintiff's motion to stay the proceedings.  Finally, the court will order plaintiff to show cause for his failure to serve Lt. Wallach.  An appropriate order will issue.